FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2019 JUL 29 PM 3: 45

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EMMANUEL EDOKOBI,
  Plaintiff,

v.

MONDO INTERNATIONAL, LLC, *et al.*,
  Defendants.

Civil Action No. ELH-18-3153

## MEMORANDUM OPINION

This case was initiated by self-represented plaintiff Emmanuel Edokobi, who lodges multiple claims against several defendants. The claims appear to relate to a motor vehicle accident that occurred on October 24, 2015, in the course of plaintiff's employment, and for which he sought workers' compensation benefits. ECF 14 ("First Amended Complaint" or "FAC").

Plaintiff has sued his employer, Mondo International, LLC ("Mondo"); Travelers Insurance Charter Oak Fire Insurance Co. ("Charter Oak" or "Travelers"), his employer's worker's compensation insurer[1]; Christine Wounaris, a Charter Oak claims handler; Kathy Stone, a vocational rehabilitation specialist; and Stone's company, Stone Vocational Services, LLC ("Stone Vocational"). *Id.* at 1.[2]

---

[1] In the FAC, plaintiff refers to Travelers Insurance Charter Oak Fire Insurance Co. as "Travelers." According to defendant, Charter Oak is "part of The Travelers Group of Insurance companies." ECF 26-1 at 3 n.1.

[2] Edokobi filed suit on October 11, 2018, against Mondo, Charter Oak, Wounaris, Stone, Stone Vocational, the Workers' Compensation Commission ("WCC"), WCC Chair R. Karl Aumann, WCC Commissioner Lauren Sfekas Godwin, and WCC Director of Support Services Regina Brown. ECF 1 ("Complaint"). On October 26, 2018, plaintiff moved for leave to file a FAC. ECF 11. In addition, he moved to dismiss defendants WCC, Aumann, Godwin, and Brown. ECF 12. I granted both motions. ECF 13; ECF 33. On December 17, 2018, plaintiff moved to dismiss Christine Wounaris from the case. ECF 40. I granted that motion by Order of December 18, 2018. ECF 46.

The FAC is almost 50 pages in length and contains 45 causes of action against defendants. ECF 14, ¶¶ 114-334. Plaintiff's original suit included 36 exhibits.[3] He appended seven more exhibits to the FAC. ECF 14-2 – ECF 14-8. Jurisdiction is founded on the basis of a federal question, under 28 U.S.C. § 1331. ECF 14, ¶ 10.

Forty-two of the counts in the FAC set forth claims that are either not cognizable as causes of action or are based on Maryland law. These include "Conspiracy to Commit Intentional Infliction of Emotional Distress"; "Conspiracy to Ruin Plaintiff's Life By Sending Plaintiff to Harms Way"; defamation; fraudulent misrepresentation; common law torts; and aiding and abetting. *Id.* In Count Seven, pursuant to 42 U.S.C. § 1985(3), plaintiff alleges that defendants conspired to deprive him of "Equal Protection of the laws." *Id.* ¶¶ 148-150. In addition, plaintiff seeks injunctive relief (*id.* ¶¶ 327-331) as well as declaratory relief, damages, and costs. *Id.* ¶ 335.[4]

---

[3] Exhibit 3 was not appended to the suit.

[4] Edokobi has an extensive history of litigation in this District. His cases include *Edokobi v. Litton Loan Servicing LP*, JFM-11-1332, ECF 83 (June 15, 2012) (granting summary judgment to defendants); *Edokobi v. Greenpoint Mortg. Funding, Inc., et al.*, JFM-13-288, ECF 53 (Mar. 29, 2013) (dismissing case because plaintiff had "no viable claim against any of the defendants"); *Edokobi v. J. Frederick Motz*, DKC-13-3378, ECF 2 (December 18, 2013) (dismissing case); *Edokobi v. M&M Mortg. Servs. Inc., et al.*, PWG-13-3707, ECF 18 (Oct. 22, 2014) (dismissing case and enjoining plaintiff from filing complaints or other papers relating to the subject matter of the suit without leave of court); ); *Edokobi v. United States Dep't of Justice, et al.*, TDC-17-3639, ECF 1 (filed December 17, 2017); *Edokobi v. Verizon Md. Inc., et al.*, TDC-18-557, ECF 31 (Sept. 27, 2018) (dismissing case); *Edokobi v. Coakley Realty Mgmt., LLC*, TDC-17-2825, ECF 32 (Sept. 27, 2018) (dismissing case); *Edokobi v. U.S. General Servs. Admin., et al.*, TDC-17-2469, ECF 80 (Sept. 27, 2018) (dismissing case); *Edokobi v. Toyota Motor Credit Corp., et al.*, PWG-19-248 (removed to federal court on January 28, 2019); *Edokobi v. Judge Paul W. Grimm*, GJH-19-905 (removed to federal court on March 27, 2019); *Edokobi v. SunTrust Bank, et al.*, PWG-19-1071 (removed to federal court on April 10, 2019).

Several motions are pending.[5] Charter Oak moves to dismiss the FAC, pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction, and under Fed. R. Civ. 12(b)(6), for failure to state a claim. ECF 26. The motion is supported by a memorandum of law (ECF 26-1) (collectively, "Charter Oak Motion"), and an exhibit. ECF 26-2. Charter Oak contends, *inter alia*, that plaintiff's allegations fail to confer subject matter jurisdiction.

Mondo joins the Charter Oak Motion (ECF 47), supported by a memorandum of law. ECF 47-1 (collectively, "Mondo Motion"). Also, Mondo moves to dismiss the FAC, pursuant to Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction; under Fed. R. Civ. P. 12(b)(4), for insufficient process; and under Fed. R. Civ. P. 12(b)(5), for insufficient service of process. *Id.* Plaintiff opposes the Charter Oak and Mondo motions (ECF 72), with several exhibits. ECF 72-2 – ECF 72-13.

In addition, Stone and Stone Vocational (collectively, the "Stone Defendants") move to dismiss the FAC, pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction, and under Fed. R. Civ. P. 12(b)(6), for failure to state a claim. ECF 53. The motion is supported by a memorandum of law (ECF 53-1) (collectively, "Stone Motion"). Plaintiff opposes the Stone Motion (ECF 77), supported by exhibits. ECF 77-2 – ECF 77-6.

Plaintiff filed a Motion for Leave to File a Second Amended Complaint ("SAC") on December 17, 2018. ECF 41 ("Motion for Leave"). The proposed SAC (ECF 41-2) is 50 pages in length and contains 44 causes of actions. *Id.* ¶¶ 110-350.

---

[5] On December 17, 2018, Edokobi moved "to Consolidate Filing of Motions and Responses" because "there have been numerous filings" and the case "appears to be in disarray." ECF 39, ¶ 1. I shall deny plaintiff's motion to consolidate.

Six counts of the SAC (Counts One through Five and Count Twenty-One) set forth claims under 42 U.S.C. § 1985(3). ECF 41-2, ¶¶ 110-144. Thirty-six counts allege claims based on Maryland tort and employment law. *Id.* Counts Forty-Three and Forty-Four seek injunctive relief. *Id.* ¶¶ 346-350. Notably, the SAC names four additional defendants: two corporate officers of Mondo, Michael Kirven and Tim Johnson, and two corporate officers of Charter Oak, Nicholas Seminara and Daniel Stephen Frey. *Id.* at 1.

In the SAC, plaintiff asserts jurisdiction based on diversity, 28 U.S.C. § 1332; federal question, 28 U.S.C. § 1331; and supplemental jurisdiction, 28 U.S.C. § 1367(a). ECF 41-2, ¶ 8. Plaintiff seeks compensatory and punitive damages for bodily injury, impairment of earning capacity, intentional infliction of emotional distress, and post-traumatic stress disorder. He relies on the Eighth Amendment to the Constitution; 42 U.S.C. § 1985(e); Fed. R. Civ. P. 9(a)(1); and a host of provisions in the Labor and Employment Article of the Maryland Code as well as the Code of Maryland Regulations ("COMAR"). ECF 41-2 at 1.

Defendants oppose the Motion for Leave, asserting that the proposed amendment would be futile. ECF 61; ECF 64; ECF 66. On December 21, 2018, plaintiff sought "Court Permission to Respond to Defendants' Response to Second Amended Complain[t] **Rather Than Responding** to Defendants' Current Motions to Dismiss For Lack of Jurisdiction and Failure to State a Claim" (ECF 58), on the basis that "the Second Amended [Complaint] has Addressed those Issues of Lack of Jurisdiction and Failure to State a Claim." *Id.* at 5 (emphasis in original). However, plaintiff proceeded to file responses in opposition to defendants' motions to dismiss. ECF 72; ECF 77. Accordingly, I shall deny ECF 58, as moot.

In addition, plaintiff has filed two motions to compel. ECF 16; ECF 71. Plaintiff moves to compel "Defendants to Restart paying plaintiff's weekly temporary total disability payments."

4

ECF 16. The motion is supported by several exhibits. ECF 16-2 – ECF 16-7. And, plaintiff moves to compel Mondo and Charter Oak "to Produce Workers' Compensation Commission Rulings and Adjudication . . . ." ECF 71.

No hearing is necessary to resolve the motions. *See* Local Rule 105.6. For the reasons that follow, I shall grant plaintiff's Motion for Leave (ECF 41). And, I shall construe the Charter Oak Motion (ECF 26), the Mondo Motion (ECF 47), and the Stone Motion (ECF 53) as motions lodged against the Second Amended Complaint. I shall also grant defendants' motions to dismiss. Therefore, I shall deny, as moot, plaintiffs' motions to compel (ECF 16; ECF 71) and his motion to consolidate (ECF 39).

## I.      Factual Allegations[6]

Edokobi, a Maryland citizen, is "a field computer technician." ECF 41-2, ¶¶ 11, 22. Mondo "is a limited liability company organized and existing under the laws of Delaware, with a principal place of business" in New York. *Id.* ¶ 12. It is "registered to operate" in Maryland and "offers to sell products and services throughout the United States," including in Maryland. *Id.* ¶¶ 12-13. Kirven, whose "Domicile is in the State of New York," is the "Founder and Chairman" of Mondo. *Id.* ¶ 14. And, Johnson, whose "Domicile is in the State of New York," is the "Chief Executive Officer ('CEO') and a Key Executive Officer and Board Member" of Mondo. *Id.* ¶ 15.

Charter Oak "offers property and automotive insurance solutions" and "sells and offers" insurance "and other services throughout the United States," including in Maryland. *Id.* ¶¶ 16-17. It has a principal place of business in Connecticut. *Id.* ¶ 16.

---

[6] Given the procedural posture of this case, I must assume the truth of all well-pleaded factual allegations in the Second Amended Complaint. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

Seminara is the "Executive Vice President ('SVP') of Special Liability Group" and a "Board Member" of Charter Oak. ECF 41-2, ¶ 18. His "Domicile is in the State of Connecticut." *Id.* Frey, whose "Domicile is in the State of Connecticut," is the "Executive Vice President and Chief Financial Officer ('CFO')" and "Board Member" of Charter Oak. *Id.* ¶ 19.

Stone is a "Vocational Rehabilitation Practitioner Appointed" by Mondo and Charter Oak for plaintiff's WCC "**CLAIM NO: B 810879**." *Id.* ¶ 20 (emphasis in original). Notably, Stone's "Domicile is in the State of Maryland." *Id.* Stone Vocational Services, LLC "is a limited liability company organized and existing under the laws of the State of Maryland," with a "principal place of business" in Maryland. *Id.* ¶ 21; *see also* ECF 54 (Disclosure Statement).

On March 15, 2015, Mondo hired Edokobi as a computer technician and assigned him to work at Unisys Corporation ("Unisys"), a "Texas-based Tech Agency." *Id.* ¶ 22. Unisys assigned plaintiff to work at Dell Corporation ("Dell") "to provide Tech-support to Dell Computer Users" in Washington, D.C. *Id.* Plaintiff's job with Unisys "involve[d] driving to different locations" in Washington, D.C., and his "daily work operations commenced by" driving to the FedEx Shipping Center "to drop off used parts and pick up new parts . . . ." *Id.* ¶ 23. At the time, plaintiff also had a second job driving limousines, "Luxury Sedans" and other "High-end Vehicles." *Id.* ¶ 39.

Plaintiff alleges that on October 10, 2015, he completed a "Medical Fitness" exam, as required by the Maryland Motor Vehicle Administration ("MVA") and the Maryland Department of Transportation ("MDOT"). *Id.* ¶ 41. According to plaintiff, his completion of the "Medical Fitness" exam demonstrated "no medical issues" with his "Left Arm" or his "Left- Hand." *Id.* ¶ 42.

On October 14, 2015, at approximately 10:45 a.m., plaintiff was driving to the FedEx Shipping Center when another vehicle rear-ended his vehicle. *Id.* ¶ 25. As a result of the impact,

plaintiff "was Temporarily Unconscious" and "taken to George Washington University Hospital[.]" ECF 41-2, ¶ 25. When Edokobi regained "Consciousness," he "discovered" that he suffered injuries to his left arm, left hand, left leg, back, and neck. *Id.* ¶ 26. Plaintiff claims that he "was not able to Lift or Move" his left arm or his left hand. *Id.* ¶ 27. Due to the "excruciating" pain, the nurses at the hospital intermittently gave him "Pains [sic] Relief Medications." *Id.* ¶ 28.

According to plaintiff, the nurses told him that the pain and immobility affecting the left side of his body would subside in a week. *Id.* ¶¶ 32-33. But, he was advised that if the pain continued after a week, he should see his primary care doctor or go to the emergency room. *Id.* ¶ 34.

When Edokobi's wife arrived at the hospital, she called Robert Bradley, plaintiff's manager at Unisys, as well as to Mondo and his clients, to inform them of the auto accident. *Id.* ¶ 30. On October 14, 2015, at approximately 5:00 p.m., plaintiff was released from the hospital. *Id.* ¶ 36. According to plaintiff, he was given Ibuprofen and "Diazepam (Valium)." *Id.*

On October 22, 2015, plaintiff went to his primary health doctor, Dr. Wang, because he continued to experience pain in his left hand, left arm, left leg, back, and neck. *Id.* ¶ 37. Dr. Wang referred plaintiff to an "Orthopedic Doctor," as well as a psychologist, "due to anxiety and nightmares" following the accident. *Id.* ¶¶ 37-38.

Plaintiff claims that he has been driving in the United States for the past 18 years, and has no "moving violation or any points [o]n [his] driving records . . . ." *Id.* ¶ 43. Plaintiff also alleges that he has a "**STAR EMBEDDER**" on his driver's license, "which demonstrates a mark of excellent driving records." *Id.* (emphasis in original).

According to the SAC, Edokobi was involved in a "Head-on" auto accident in December 1995, in which he broke bones in his left arm and left leg, and another person died. ECF 41-

2, ¶ 44.[7]  Plaintiff states that in 1996, he underwent surgery for those injuries, performed by Dr. DePasquale at the Washington Hospital Center in Washington, D.C.  *Id.* ¶ 46.  In addition, Edokobi claims to have had another surgical procedure on his left leg at the University of Maryland Medical Center in Baltimore in 1997.  *Id.* ¶ 47.

The SAC alleges that following Edokobi's surgery in 1996, he had a "painless-non-union," *i.e.*, a broken bone that failed to heal, in his left arm.  *Id.* ¶ 48.  He still used his left hand to lift and carry computers and equipment and to drive buses and other commercial vehicles without pain or medical issues.  *Id.* ¶¶ 48-50.

Plaintiff states that on March 11, 2016, Dr. Michael S. Murphy performed a medical examination of his left arm and left hand and filed a medical report.  *Id.* ¶ 57.  Plaintiff contends that Dr. Murphy's medical report "is incorrect and bias[ed] and prejudicial to Plaintiff[.]"  *Id.*  In the report, Dr. Murphy allegedly wrote: "**THERE IS NO ELBOW FLEXION ON PLAINTIFF'S RIGHT HAND**."  *Id.* ¶ 58 (emphasis in original).

Edokobi maintains that no doctor has treated his left arm or left hand.  *Id.* ¶ 61.  Further, he claims that he was scheduled to undergo bone reconstructive surgery by Dr. Robert Buber of "OrthoBethesda."  *Id.*  However, Dr. Buber "later backed off" from performing the surgery.  *Id.*  In a medical report dated April 27, 2017, Dr. Buber referred to plaintiff's medical condition as "the Conversion Disorder."  *Id.*

On February 20, 2018, Dr. Stephen W. Siebert, Charter Oak's psychiatrist, allegedly provided Edokobi a "Psychiatric Independent Medical Reevaluation Addendum."  *Id.* ¶ 62.  According to Edokobi, Dr. Siebert's Addendum "contradicts" Dr. Buber's medical report of April 27, 2017.  *Id.* ¶ 62.

---

[7] It appears that this accident occurred in Nigeria.  *See* ECF 41-2, ¶ 71.

To treat his left arm and left hand, plaintiff received laser treatment on September 29, 2017. ECF 41-2, ¶ 78. Plaintiff claims he paid out of pocket for the treatment, because Charter Oak and Mondo "Have Refused to Pay for Plaintiff's Medical Treatment . . . ." *Id.* ¶ 79.

The SAC alleges that on October 2, 2017, Edokobi sent a letter to Christine Nizer, the "Administrator" of the MVA, to request "an extension of time" to complete the "Medical Examiner's Certificate" for his commercial driver's license. *Id.* ¶ 51. According to plaintiff, he sent the letter asking for an extension, because his left hand could not "Grip or Hold Anything" as a result of the accident on October 14, 2015. *Id.* ¶¶ 51-52.[8]

In response to Edokobi's letter, the MVA's "Medical Experts" sent plaintiff a "Health Questionnaire," requesting the contact information of his doctors and any current medications he was taking. *Id.* ¶ 54. Plaintiff claims that he "was informed that MVA's Medical Experts Conducted Comprehensive Medical Investigations" on the "Medical Conditions" of his left arm and left hand. *Id.* ¶ 55.

Once the MVA's medical experts completed their investigation, the MVA purportedly revoked Edokobi's commercial driver's license and placed him under "**J-LICENSE RESTRICTIONS**." *Id.* ¶ 56 (emphasis in original). This prevented him from driving a vehicle without a driving instructor. *Id.*

According to the SAC, on April 27, 2018, defendants "sought and obtained from WCC Commissioner Lauren Godwin an Order to Train Plaintiff in the Adoptive Driving and to Install Adoptive Driving Equipment . . . on the Steering Wheels of Plaintiff's Vehicle." *Id.* ¶ 80.

---

[8] Plaintiff's timeline is unclear. Plaintiff states that he sent the letter to Nizer on October 2, 2017, following his accident on October 14, 2015. This would mean he sent the letter before the accident even occurred.

Since May 2018, Edokobi has received "psychiatric treatments" from Dr. Patrick Sheehan for "Anxiety, Depression, Emotional Distress, Fear, Panic Attacks, Nightmares" and Post-Traumatic Stress Disorder ("PTSD"). ECF 41-2, ¶¶ 66, 68. He claims that he continues to experience "serious Nightmares" related to the 1995 and 2015 motor vehicle accidents. *Id.* ¶¶ 69-71.

Further, plaintiff alleges that the following medications are prescribed for his mental health issues: Bupropion HCL ER XL (300mg); Prazosin HCL (2mg); Clonazepam (0.5mg); Diazepam (5mg); Duloxetine HCL (30mg); and Topiramate (50mg). *Id.* ¶¶ 71-72. Plaintiff states that his pain medications include Advil (256mg); Ibuprofen (600mg); and Hydrocodone-Acetaminophen. *Id.* ¶¶ 73-74.

According to plaintiff, Diazepam and Prazosin cause impotence. *Id.* ¶ 76. As a result, he has been treated for "Erectile Dysfunction (ED) by Dr. Myron Murdock, "a Senior Partner at MidAtlantic Urology Associates LLC." *Id.* ¶ 77. Dr. Murdock has prescribed "Oxybutynin (10mg) and Carver Jack." *Id.*

The SAC states that Charter Oak and Mondo scheduled plaintiff's "Adoptive Training at the Sinai Hospital in Baltimore" on June 14, 2018. *Id.* ¶ 81. According to plaintiff, that day was the "First Time" he used the adoptive driving equipment. *Id.* ¶ 85. While using the equipment, plaintiff claims that he felt "severe pains" in the wrist and fingers of his right hand. *Id.* Plaintiff felt this pain again while driving on July 31, 2018, and August 3, 2018. *Id.* ¶¶ 87-88.

On August 4, 2018, plaintiff went to his primary care doctor for the "pains" in his wrist and fingers on his right hand. *Id.* ¶ 90. Mr. Edokobi alleges that the nurse ordered an X-Ray of his wrist and fingers, "Voltaren Cream," and a referral to "See Pains [sic] Management." *Id.* ¶¶ 90-93.

Plaintiff saw Dr. Stuart Hough on August 15, 2018, for pain management. ECF 41-2, ¶ 95. Dr. Hough then referred plaintiff to "Adventist HealthCare Occupational Therapy." *Id.* ¶ 97. On August 21, 2018, plaintiff claims that he saw an occupational therapist at Adventist HealthCare, where he received "extensive training on how to use" the adoptive driving equipment. *Id.* ¶ 98.

To pay for the treatment of his right hand, plaintiff claims he "had to use" his wife's health insurance, because Charter Oak and Mondo denied coverage of the treatment. *Id.* ¶ 101. Edokobi states that he emailed both Charter Oak and Mondo concerning the pain in his right wrist and fingers, but neither insurance company replied to these emails. *Id.* ¶¶ 102-103.

Further, plaintiff claims that defendants' "Vocational Rehabilitation Plan is Cloaked with Deception and Falsehood" because defendants did not comply with the treatments recommended by Dr. Siebert. *Id.* ¶¶ 107-09.

## II.     Legal Standards

Defendants have moved to dismiss plaintiff's claims based on several grounds. The Charter Oak Motion (ECF 26) and the Stone Motion (ECF 53) are brought under Rules 12(b)(1) and 12(b)(6). And, the Mondo Motion (ECF 47) is lodged under Rules 12(b)(1), 12(b)(2), 12(b)(4), 12(b)(5), and 12(b)(6).

Pursuant to Rule 12(b)(1), all defendants contend that plaintiff's allegations fail to establish complete diversity of citizenship, as required under 28 U.S.C. § 1332. ECF 53-1 at 4. Defendants also argue that plaintiff has not shown federal question jurisdiction under 28 U.S.C. § 1331, because his claims under 28 U.S.C. § 1985(3) are "'so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" ECF 26-1 at 6 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)). Alternatively, defendants assert that plaintiff's federal claims fail to state a claim

under Rule 12(b)(6). ECF 53-1 at 3. And, they maintain that, with the dismissal of the federal claims, "there is no independent basis for subject matter jurisdiction as to the state-law claims." ECF 26-1 at 9.

I need not address all the rules on which defendants rely. I shall address only Rules 12(b)(1) and 12(b)(6).

### A.    Rule 12(b)(1)

Plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also The Piney Run Pres. Ass'n v. The Cty. Comm'rs Of Carroll Cty.*, 523 F.3d 453, 459 (4th Cir. 2008); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).[9] A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted) (alteration in original); *see Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013).

In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In a factual challenge, on the other hand, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Id.* In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary

---

[9] In the context of a claim of sovereign immunity, the defendant "bears the burden of demonstrating" sovereign immunity, because it is "akin to an affirmative defense." *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014). However, sovereign immunity is not at issue here.

judgment." *Velasco v. Gov't Of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347-48 (4th Cir. 2009) ("Unless 'the jurisdictional facts are intertwined with the facts central to the merits of the dispute,' the district court may ... resolve the jurisdictional facts in dispute by considering evidence ... such as affidavits.") (citation omitted); *Evans,* 166 F.3d at 647.

With respect to the contention that plaintiff has failed to assert diversity of citizenship, defendants seem to raise a facial challenge. Therefore, I shall assume the truth of Edokobi's allegations.

### B.     Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556

U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . .") (citation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. ____, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440 (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations

allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Cmm'w of Va.*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quotation marks and citation omitted). The purpose of the rule is to ensure that defendants are "given adequate notice of the nature of a claim" made against them. *Twombly*, 550 U.S. at 555-56. But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman*).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways,* 510 F.3d 442, 450 (4th Cir. 2007). "Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated

into the complaint.'" *Zak*, 780 F.3d at 606 (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Under limited circumstances, however, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb*, 791 F.3d at 508. A court may also take judicial notice of matters of public record. *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

In particular, a court may consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166; *see also* Fed. R. Civ. P. 10(c); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Paradise Wire & Cable*, 918 F.3d at 318. However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)).

Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558

(2017); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (citation omitted); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

### III.     Plaintiff's Motion for Leave

As noted, plaintiff seeks leave to file the Second Amended Complaint. ECF 41.

Rule 15 of the Federal Rules of Civil Procedure governs amendments to pleadings. Under Rule 15(a)(1)(A), "[a] party may amend its pleading once as a matter of course," if done within 21 days after serving the pleading. Or, "if the pleading is one to which a responsive pleading is required," a party may amend once as a matter of course, provided that it does so within "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1)(B). Rule 15(a)(2) provides that, "[i]n all other cases," a party wishing to amend its pleading must obtain "the opposing party's written consent or the court's leave." Notably, Rule 15(a)(2) states, in part: "The court should freely give leave [to amend] when justice so requires." *Id.*

There are three circumstances when it is appropriate to deny leave to amend: "(1) 'the amendment would be prejudicial to the opposing party;' (2) 'there has been bad faith on the part

of the moving party;' or (3) 'the amendment would have been futile.'" *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 121 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)). An amendment is futile "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986).

Defendants would suffer no prejudice if Edokobi is permitted to file the SAC. And, there is no indication that Edokobi has acted in bad faith. Although I ultimately conclude that the proposed SAC is subject to dismissal, that conclusion is apparent only after an analysis of the allegations. Therefore, I shall grant plaintiff's Motion for Leave (ECF 41) and consider the allegations in the proposed SAC.[10] But, to avoid further delay, I shall construe defendants' motions to dismiss as if they were lodged against the SAC.

## IV. Defendants' Motions to Dismiss

As noted, Edokobi has filed suit in federal court on the bases of diversity jurisdiction, 28 U.S.C. § 1332; federal question jurisdiction, 28 U.S.C. § 1331; and supplemental jurisdiction, 28 U.S.C. § 1367(a). ECF 41-2, ¶ 8. Defendants contest subject matter jurisdiction. I will address each basis, in turn.

### A. Jurisdiction Generally

As an initial matter, defendants contend that complete diversity of citizenship does not exist in this case. ECF 53-1 at 3. I agree with defendants.

Federal courts are courts of limited jurisdiction. *Home Buyers Warranty Corp. v. Hanna,* 750 F.3d 427, 432 (4th Cir. 2014) (quotation marks omitted) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994)). Thus, a federal district court may adjudicate a

---

[10] Plaintiff has not served the four defendants added in the SAC. However, for the reasons explained, *infra*, plaintiff's allegations as to all defendants fail to confer subject matter jurisdiction.

case only if it possesses the "power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotation marks omitted). As the Fourth Circuit stated in *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008), if a party seeks to proceed in federal court, it "must allege and, when challenged, must demonstrate the federal court's [subject matter] jurisdiction over the matter."

Notably, "[a] court is to presume . . . that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper." *United States v. Poole,* 531 F.3d 263, 274 (4th Cir. 2008) (citing *Kokkonen,* 511 U.S. at 377). Even where no party challenges subject matter jurisdiction, a federal court has "an independent obligation to determine whether subject-matter jurisdiction exists." *Hertz Corp. v. Friend,* 559 U.S. 77, 94 (2010). And, "if Congress has not empowered the federal judiciary to hear a matter, then the case must be dismissed." *Hanna,* 750 F.3d at 432.

Congress has conferred jurisdiction on the federal courts in several ways. To provide a federal forum for plaintiffs who seek to vindicate federal rights, Congress has conferred on the district courts original jurisdiction over civil actions that arise under the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 1331; *see also Exxon Mobil Corp.,* 545 U.S. at 552; *ESAB Grp., Inc. v. Zurich Ins. PLC,* 685 F.3d 376, 394 (4th Cir. 2012); *see also* U.S. Constitution Art. III, § 2 ("The Judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made . . ."). This is sometimes called federal question jurisdiction.

In addition, "Congress . . . has granted district courts original jurisdiction in civil actions between citizens of different States, between U.S. citizens and foreign citizens, or by foreign states against U.S. citizens," so long as the amount in controversy exceeds $75,000. *Exxon Mobil*

*Corp.,* 545 U.S. at 552; *see* 28 U.S.C. § 1332. Of relevance here, diversity jurisdiction "requires complete diversity among parties, meaning that the citizenship of *every* plaintiff must be different from the citizenship of *every* defendant." *Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC,* 636 F.3d 101, 103 (4th Cir. 2011) (emphasis added); *see Strawbridge v. Curtiss,* 7 U.S. 267 (1806).

Under the "well-pleaded complaint" rule, facts showing the existence of subject matter jurisdiction "must be affirmatively alleged in the complaint." *Pinkley, Inc. v. City of Frederick,* 191 F.3d 394, 399 (4th Cir. 1999) (citing *McNutt v. Gen'l Motors Acceptance Corp.,* 298 U.S. 178 (1936)). Put another way, "before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown,* 462 F.3d 312, 316 (4th Cir. 2006). This means that "a claim of federal question jurisdiction is to be resolved on the basis of the allegations of the complaint itself." *Burgess v. Charlottesville Sav. & Loan Assoc.,* 477 F.2d 40, 43 (4th Cir. 1973). Therefore, a complaint must contain allegations "'affirmatively and distinctly' establishing federal grounds[] 'not in mere form, but in substance' and 'not in mere assertion, but in essence and effect." *Id.* (citations omitted).

Moreover, the "burden of establishing subject matter jurisdiction is on . . . the party asserting jurisdiction." *Robb Evans & Assocs., LLC v. Holibaugh,* 609 F.3d 359, 362 (4th Cir. 2010); *accord Hertz,* 599 U.S. at 95; *McBurney v. Cuccinelli,* 616 F.3d 393, 408 (4th Cir. 2010). And, "the mere assertion in a pleading that the case is one involving the construction or application of the federal laws does not authorize the District Court to entertain the suit'. . . ." *Burgess,* 477 F.2d at 43 (citations omitted).

Under 28 U.S.C. § 1367(a), district courts are also granted "supplemental jurisdiction over all other claims that are so related to claims in the action within [the courts'] original jurisdiction

that they form part of the same case or controversy under Article III of the United States Constitution."

Plaintiff's claims are largely founded on Maryland law. Because the Court does not have original jurisdiction over plaintiff's state law claims, the Court may resolve those claims in accordance with the grant of supplemental jurisdiction in 28 U.S.C. § 1367(a). It states:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Pursuant to § 1367(c)(3), however, a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." In *Shanaghan v. Cahill*, 58 F.3d 106 (4th Cir. 1995), the Fourth Circuit recognized that under § 1367(c)(3), "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when federal claims have been extinguished." *Id.* at 110; *see also ESAB*, 685 F.3d at 394 ("Section 1367(c) recognizes courts' authority to decline to exercise supplemental jurisdiction in limited circumstances, including . . . where the court dismisses the claims over which it has original jurisdiction.").

Further, "the doctrine of supplemental jurisdiction . . . 'is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in a manner that most sensibly accommodates a range of concerns and values.'" *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 203 (4th Cir. 1997) (quoting *Shanaghan*, 58 F.3d at 106). Notably, "under the authority of 28 U.S.C. § 1367(c), authorizing a federal court to decline to exercise supplemental jurisdiction, a district court has inherent power to dismiss the case . . . provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met." *Hinson v. Norwest Fin. S. Carolina, Inc.*, 239 F.3d 611, 616 (4th Cir. 2001); *see e.g., Int'l Ass'n of Machinists &*

*Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 500 (D. Md. 2005) (Chasanow, J.) ("Because the court will dismiss the claims over which it has original jurisdiction, the court will decline to exercise supplemental jurisdiction over the remaining state law claims.").

## B. Diversity

Defendants assert that plaintiff's allegations fail to establish subject matter jurisdiction, pursuant to Rule 12(b)(1).

The citizenship of the litigants is central when diversity jurisdiction is invoked. *Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660, 663 (4th Cir. 1998). Notably, "state citizenship for diversity jurisdiction depends not on residence, but on national citizenship and domicile." *Id.* (citation omitted). And, "the existence of such citizenship cannot be inferred from allegations of mere residence, standing alone." *Id*; *see also Robertson v. Cease*, 97 U.S. 646, 648 (1878) ("Citizenship and residence, as often declared by this court, are not synonymous terms."). In other words, for "purposes of diversity jurisdiction, residency is not sufficient to establish citizenship." *Johnson v. Advance Am., Cash Advance Ctrs. of S.C., Inc.*, 549 F.3d 932, 937 n.2 (4th Cir. 2008). Rather, a U.S. national is a citizen of the state where the person has his or her domicile, which "requires physical presence, coupled with an intent to make the State a home." *Id.*

Edokobi alleges that he is a "citizen of the State of Maryland" (ECF 41-2, ¶ 11); Mondo is "a limited liability company organized and existing under the laws of Delaware, with a principal place of business" in New York (*id.* ¶ 12); Kirven is a citizen of New York (*id.* ¶ 14); Johnson is a citizen of New York (*id.* ¶ 15); Charter Oak is a company "with a principal place of business" in Connecticut (*id.* ¶ 16); Seminara is a citizen of Connecticut (*id.* ¶ 18); and Frey is a citizen of Connecticut. *Id.* ¶ 19). However, he asserts that Stone is a citizen of Maryland (*id.* ¶ 20), and

Stone Vocational Services, LLC "is a limited liability company organized and existing under the laws of [the] State of Maryland" with a "principal place of business" in Maryland. *Id.* ¶ 21.[11]

With exceptions not applicable here, and as noted, diversity jurisdiction under 28 U.S.C. § 1332 "requires complete diversity among parties, meaning that the citizenship of *every* plaintiff must be different from the citizenship of *every* defendant." *Cent. W. Va. Energy Co.*, 636 F.3d at 103 (emphasis added). In this case, both plaintiff and defendant Stone are citizens of Maryland. On the face of the SAC, there is no diversity of citizenship.

Accordingly, plaintiff fails to satisfy the requirements of diversity jurisdiction, under 28 U.S.C. § 1332.

## C.    Federal Claims

Defendants argue that plaintiff fails to establish federal question jurisdiction, because plaintiff's federal claims are "fatally defective and cannot create a valid federal question," pursuant to Rule 12(b)(1). ECF 26-1 at 5. Alternatively, defendants assert that plaintiff's federal claims should be dismissed under Rule 12(b)(6), for failure to state a claim. *Id.* I will address defendants' arguments under Rule 12(b)(6).

In Counts One through Five and Count Twenty-One of the SAC, Edokobi asserts that defendants conspired to violate plaintiff's civil rights, pursuant to 42 U.S.C. § 1985(3). ECF 41-2, ¶¶ 110-136, 228-231. Edokobi alleges that defendants "conspir[ed] with each other to deprive Plaintiff's equal protection of the law pursuant to [the] Eighth Amendment . . . by Defendants'

---

[11] "For purposes of diversity jurisdiction, the citizenship of a limited liability company . . . is determined by the citizenship of all of its members." *Mountain State*, 636 F.3d at 103. With respect to a LLC, citizenship "must be traced through however many layers of partners or members there may be." *Hart v. Terminex Int'l*, 336 F.3d 541, 543 (7th Cir. 2003). The SAC does not reflect consideration of the place of domicile for the members of Mondo or Stone Vocational. But, in light of the citizenship of Stone, the citizenship of the members of Stone Vocational would not alter the Court's ruling.

Refusal to Provide Basic Medical Treatments to Plaintiff's Left-Hand for which Plaintiff continues to suffer severe and persisting pains that exposes Plaintiff to Cruel and Unusual Punishments." ECF 42-1, ¶ 112. Further, plaintiff contends: "Defendants' Refusal to Provide Medical Treatments to Plaintiff's Left Hand as directed by Dr. Murphy violates [the] Eighth Amendment, because Plaintiff continues to suffer severe and persisting pains." *Id.* ¶ 120.

Edokobi also asserts that defendants violated § 1985(3) "by Conspiring with each other to Discriminate against Plaintiff, because of Plaintiff's Pre-existing Medical Condition for which Defendants Refused to Provide Basic Medical Treatments on Plaintiff's Left Hand . . . ." *Id.* ¶ 129. Plaintiff claims that "Defendants Have Treated Plaintiff Differently by Defendants' Failure to Determine 'The Nature And Extent Of the Disability Of Plaintiff's Left-Arm and Left-Hand' . . . ." *Id.* ¶ 231.

Defendants argue that plaintiff's §1985(3) claims fail because "'the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts.'" ECF 26-1 at 7 (quoting *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995)); *see also* ECF 47-1 at 13; ECF 53-1 at 3-4.

To state a claim under 42 U.S.C. § 1985(3), "Depriving persons of rights or privileges," a plaintiff must set forth the following:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*See Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995).

In addition, the plaintiff "must show an agreement or a meeting of the minds by [the] defendants to violate the [plaintiff's] constitutional rights." *Id.* at 1377 (internal quotation marks

omitted). The *Poe* Court has said, *id.*: "[W]e have specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts."

In *A Society Without A Name v. Virginia*, 655 F.3d 342 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012), the Fourth Circuit considered, among other things, the adequacy of a claim under 42 U.S.C. § 1985(3). It said, *id.* at 346: "[W]here a conspiracy is alleged, the plaintiff must plead facts amounting to more than 'parallel conduct and a bare assertion of conspiracy. . . . Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply fact adequate to show illegality." (Citing *Twombly*, 550 U.S. at 556-57). The Court added that "factual allegations must plausibly suggest agreement, rather than being merely consistent with agreement." *Id.*

In my view, plaintiff's allegations are woefully deficient. In a conclusory fashion, Edokobi asserts that defendants conspired in refusing to provide him with basic medical treatment. Plaintiff further alleges that defendants discriminated against him based on his "Pre-Existing Medical Condition" and treated him differently by failing to determine the nature and extent of his injuries. ECF 41-2, ¶ 129.

Plaintiff's generalized allegations of conspiracy are not sufficient to state a claim under § 1985. *Poe*, 47 F.3d at 1377. In particular, the SAC fails to assert any "agreement or meeting of the minds" among defendants. Moreover, there are no allegations that suggest invidious discriminatory animus, or the deprivation of equal enjoyment of rights. At best, plaintiff has alleged "'parallel conduct and a bare assertion of a conspiracy.'" *A Society Without a Name*, 655 F.3d at 347 (*Twombly*, 550 U.S. at 556). Such allegations are insufficient to survive a motion to dismiss. *A Society Without a Name*, 655 F.3d at 347.

Because plaintiff fails to state a claim for relief under 42 U.S.C. § 1985(3), plaintiff's federal claims are subject to dismissal.

### D.   Supplemental Jurisdiction

Edokobi's remaining claims are predicated on State law.  As noted, 28 U.S.C. § 1367 governs supplemental jurisdiction over the State law claims.

As indicated, "the doctrine of supplemental jurisdiction . . . 'is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in a manner that most sensibly accommodates a range of concerns and values.'" *Jordahl*, 122 F.3d at 203 (citation omitted).  In *ESAB Group, Inc.*, 685 F.3d 376, the Fourth Circuit described the traditional approach to supplemental jurisdiction (previously known as "pendent" jurisdiction).  It said, *id.* at 394 (internal citation omitted):

> [S]o long as one claim in an action presented a federal question on the face of the well-pleaded complaint, a court could exercise jurisdiction over the entire constitutional case or controversy.  It does not follow, however, that the federal court had original jurisdiction over the entire case; rather, it had original jurisdiction over at least one claim, allowing the exercise of supplemental/pendent jurisdiction over the remaining claims.  And the Supreme Court subsequently recognized that, when the exercise of pendent jurisdiction over these claims became "inappropriate," district courts had inherent authority to remand them to state courts.

Pursuant to § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  In *Shanaghan v. Cahill*, 58 F.3d at 110, the Fourth Circuit recognized that under § 1367(c)(3), "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when federal claims have been extinguished."  *See also ESAB*, 685 F.3d at 394 ("Section 1367(c) recognizes courts' authority to decline to exercise supplemental jurisdiction in limited circumstances, including . . . where the court dismisses the claims over which it has original

jurisdiction."); *Hinson v. Norwest Fin. S. Carolina, Inc.*, 239 F.3d 611, 616 (4th Cir. 2001) (stating that, "under the authority of 28 U.S.C. § 1367(c), authorizing a federal court to decline to exercise supplemental jurisdiction, a district court has inherent power to dismiss the case . . . provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met"). *See also, e.g., Ramsay v. Sawyer Prop. Mgmt. of Md., LLC*, 948 F. Supp. 2d 525, 537 (D. Md. 2013); *Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 500 (D. Md. 2005) ("Because the court will dismiss the claims over which it has original jurisdiction, the court will decline to exercise supplemental jurisdiction over the remaining state law claims.").

Section 1367(c)(2) of Title 28 of the United States Code is relevant here. It provides that a district court may decline to exercise supplemental jurisdiction if the supplemental claim "substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c). In this case, that is certainly the situation.

Therefore, I will dismiss plaintiff's federal claims in Counts One through Five and Count Twenty-One. In the absence of federal question jurisdiction, I will exercise my discretion and decline to exercise supplemental jurisdiction over the remaining claims under Maryland law. Therefore, the claims under Maryland law shall be dismissed, without prejudice.[12]

## V. Conclusion

For the foregoing reasons, I shall GRANT plaintiff's Motion for Leave (ECF 41). I shall also GRANT the Charter Oak Motion (ECF 26), the Mondo Motion (ECF 47), and the Stone

---

[12] Edokobi recently filed suit on April 1, 2019, against Mondo, Charter Oak, and the WCC in the Circuit Court for Montgomery County. *See Emmanuel Edokobi v. Mondo International, LLC, et al.*, Case No. 465198-V. There, Edokobi seeks judicial review of the WCC's decision of March 1, 2019.

Motion (ECF 53). I shall DENY, as moot, plaintiffs' motions to compel (ECF 16; ECF 71), motion to consolidate (ECF 39), and motion to respond (ECF 58).

An Order follows.


Date:   July 29, 2019                                  _____/s/_____
                                                       Ellen Lipton Hollander
                                                       United States District Judge